UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JADALYN R. TAMAYO,

                Plaintiff,

                                        **COMPLAINT**

v.

**BOARD OF REGENTS OF THE UNIVERSITY**    Case No. 21-CV-217
**OF WISCONSIN SYSTEM,**

                Defendant.

---

Plaintiff, Jadalyn R. Tamayo, by and through her attorneys, Bakke Norman, S.C., by Kathleen R. Avoles, complains of the Defendants, Board of Regents of the University of Wisconsin System as follows:

## NATURE OF ACTION

Jadalyn R. Tamayo claims the Defendant, University of Wisconsin System, discriminated against her in the terms and conditions of employment based on disability, failed to accommodate her disability and retaliated against her for opposing discrimination in the workplace in violation of 42 U.S.C. § 12112 et. seq. and 42 U.S.C. § 12203 et. seq. Tamayo also claims that Defendant violated the Family Medical Leave Act, 29 U.S.C. §2601 et. seq. and 29 U.S.C. §825.220 et. seq. by harassing her, disciplining her for FMLA-related absences, discriminating against her in the terms and conditions of her employment and retaliating against her for opposing discrimination in the workplace.

## PARTIES

1. Plaintiff, Jadalyn R. Tamayo, is an adult resident of the State of Wisconsin and resides at 1432 Wilson Street, Menomonie, Wisconsin.

2. Defendant, Board of Regents of the University of Wisconsin System, (hereinafter referred to as University of Wisconsin System) is an educational institution organized and existing under the laws of the State of Wisconsin. Its principal place of business is located at 1860 Van Hise Hall, 1220 Linden Drive, Madison, Wisconsin.

3. The University of Wisconsin System consists of a number of University campuses throughout the State of Wisconsin. The University of Wisconsin-Stout (hereafter UW-Stout), located in Menomonie, Wisconsin, is part of the University of Wisconsin System.

## JURISDICTION AND VENUE

4. Jurisdiction in this court is proper as this case presents federal questions and controversy. Venue in the Western District of Wisconsin is appropriate as the conduct giving rise to Tamayo's claims occurred in this district.

## PROCEDURAL HISTORY

5. Tamayo filed a complaint with the Equal Rights on April 29, 2020, Case No. CR202001034, and cross-filed with the Equal Employment Opportunity Commission, Case No. 226G202000769C.

6. On March 12, 2021 Tamayo received a Notice of Right to Sue with respect to the complaint identified in paragraph five (5) hereof.

7. Tamayo also filed a complaint with the Equal Rights on March 12, 2021, Case No. CR202100548, and cross-filed with the Equal Employment Opportunity Commission, Case No. 26G202100404C claiming wrongful termination via constructive discharge.

8. As yet, Tamayo has not requested a Notice of Right to Sue related to the complaint identified in paragraph seven (7) but will do so once permitted.

## STATEMENT OF FACTS

9. Tamayo began her employment with UW-Stout on January 4, 2016, as a Shipping and Mailing Associate and continued her employment as an Inventory Control Coordinator from November 2016 to August 28, 2020.

10. In February 2018, after sporadic absences due to a serious medical condition, Tamayo was given a performance rating of "below expectations" for absences related to said condition. This action was taken despite the direct notice Tamayo gave her supervisors of her conditions and related symptoms.

11. On April 27, 2018 an Employee Request for Family and/or Medical Leave was submitted on Tamayo's behalf by Jane Poeschel, N.P. requesting an *estimate* of 1-2 days of leave per month as needed to address monthly flare ups and additional time needed to respond to and treat the same.

12. UW-Stout accepted Poeschel's request and approved up to 12 weeks of intermittent leave from May 1, 2018 to December 31, 2018, but elected to enforce a strict two-day per month limit without consideration of additional treatment time rather than the *estimated* monthly absences as requested by Poeschel and approved by UW-Stout.

13. UW-Stout requested seven (7) Certifications of Health Care Provider for Employee's Serious Health Condition (hereafter "Certifications of Health Care Provider") from April 27, 2018 through the conclusion of Tamayo's employment on August 28, 2020 with no basis for the same.

14. On August 23, 2018, a Certification of Health Care Provider was submitted from Jane Poeschel, N.P. adding "mood disorder" to the serious medical conditions affecting Tamayo. Poeschel noted that Tamayo would need treatment visits at least twice per year in addition to the estimated 1-2 days off per month for "flare ups". This request was approved by UW-Stout.

15. Despite that approval, Tamayo's supervisor, Merri King, stated in a letter of September 26, 2018 that Tamayo was strictly limited to 2 absences per month or a total of 16 hours per month. Any absences beyond that limit would be unexcused and result in discipline unless medical documentation was provided upon her return to work.

16. After attempting to reach UW-Stout Human resources employee, Erin Dunbar, on at least three occasions to give additional information regarding Tamayo's medical condition and clarify the leave requested on August 23, 2018, Jane Poeschel, N.P. sent a letter of explanation to UW-Stout.

17. The November 6, 2018 letter from Poeschel noted that Tamayo was unable to receive psychiatric treatment until January 2019 due the demand for mental health services and scarcity of available providers. It further noted:

> I understand your staff is asking for additional paperwork to "pin down" the exact number of hours that Jadie will be off. Unfortunately, for mental health services, exacerbation days are difficult to predict. One thing I do know of Jadie, she has a history of positive work ethic and it is not particularly like her to be off. In fact, she would much rather be at work enjoying those days. I have attempted to reach out to the director that Jadie has referred me to, Ms. Erin Dunbar, to offer clarification and explain this personally. I have left messages with her on three different occasions, but Ms. Dunbar does not return my phone call. I anticipate you will find this satisfactory. Again, I cannot be exact as to how many days (a) patient will need to be off as there is no "formula" to predict one's depressive or anxiety days. At this point we are treating to the best of our abilities and Jadie has been very cooperative at coming in for follow up appointments as well as taking her medications.

18. Despite clarification by Jane Poeschel, N.P. that she was unable to specify the exact number of absences needed monthly by Tamayo, and Tamayo's consistent objection to the discipline she received based upon legitimate medical absences, UW-Stout continued to hold her to two (2) absences each month or receive discipline.

19. UW-Stout Chief Human Resources Officer, Kristi Krimpelbein, subsequently sent Tamayo an email of November 15, 2018 requesting a pre-disciplinary meeting to discuss her absences. Tamayo replied asking what was to be discussed as her doctor had provided the additional information as requested. At that time, Tamayo had only 20 absences since receipt of approval in May 2018 for 12 weeks of leave during the 2018 calendar year. Krimpelbein indicated that due to Tamayo's unpredictable attendance, she was being encouraged to take a leave of absence until she began psychiatric treatment in January 2019.

20. An unpaid leave of absence in no way addressed or accommodated Tamayo's serious medical conditions which were chronic and lifelong.

21. Tamayo opted not to take the medical leave and Krimpelbein indicated that they would look for an alternate placement that Krimpelbein felt would be more appropriate. Tamayo was still required to provide medical documentation for any absence beyond the 2 day limit.

22. In her February 1, 2019 performance appraisal Tamayo received a rating of "below expectations" for her attendance. Although UW-Stout claimed that her absences of concern did not apply to FMLA absences. Tamayo responded that only 5 absences were unrelated to her medical conditions and had been excused for other reasons. Tamayo further stated that UW-Stout shouldn't be using FMLA related absences as a negative factor in disciplinary actions; nor could FMLA absences be counted under no fault attendance policies.

5

23. Tamayo was subsequently required to meet with human resources employees to "discuss" revision of her position description to accommodate her medical needs. Upon arrival at the meeting, the new position description had already been drafted with no input from Tamayo. Tamayo was told to sign it even though the changes made in no way addressed or accommodated her serious medical conditions.

24. On July 1, 2019 Kim Shulte-Shoeberg, Tamayo's temporary supervisor at the time, again accused Tamayo of exceeding her available FMLA absences each month and required that Tamayo provide medical certification for <u>every</u> unpaid FMLA-related absence regardless of how many absences she had each month.

25. On August 27, 2019, Tamayo's then-supervisor, Steve Soden, sent Tamayo a Letter of Expectations stating that she needed to take full responsibility for improving her attendance and noted that past similar letters had been an alternative to discipline.

26. On August 28, 2019, Tamayo attended a Civility in the Workplace seminar with speaker Wade Harrison. Tamayo then reached out to Harrison with concerns about discrimination based on her disability. Harrison said that he would pass Tamayo's concerns on to Krimpelbein, who did nothing to address Tamayo's concerns. The response from Krimpelbein in a letter of September 17, 2019 simply asked for yet another Certification of Health Care Provider and noted that any absences beyond 24 hours per month would not be protected and could result in her termination. Tamayo was required to attend a pre-disciplinary meeting the following day related to her absences.

27. Another Certification of Health Care Provider was submitted by Dr. Kristin Cummings on October 11, 2019 which included a sleep disorder diagnosis and noted a referral to a sleep specialist. Tamayo's number of projected absences was increased from an estimated 1-2

days per month to an estimated 1-4 days per month with additional absences of approximately 3 hours per medical appointment, 3-4 times per year. As with all other Certification of Health Care Providers submitted, it was approved by UW-Stout, but Tamayo continued to be harassed.

28. On November 5, 2019, Tamayo submitted a Reasonable Accommodation Request on an approved UW-Stout form. It listed diagnoses of mixed anxiety disorder, depressive disorder dysthymic disorder and adjustment disorder. The October 11, 2019 Certification of Health Care Provider was attached to the accommodation request which was subsequently approved by Krimpelbein on November 20, 2019.

29. Tamayo attended another pre-disciplinary meeting on November 21, 2019 to discuss her attendance and the new absence call-in procedure required of Tamayo alone, no other employees. Tamayo was also required to provide another Certification of Health Care Provider without any explanation and additional medical documentation related to past medical absences.

30. Tamayo and legal counsel attended a pre-disciplinary meeting on January 22, 2020 wherein Krimpelbein was asked the basis for her repeated requests for medical documentation from Tamayo. Krimpelbein specifically acknowledged that she had no basis to request the same, but simply didn't trust Tamayo. Tamayo was subsequently suspended without pay for one (1) day as discipline for absenteeism that was directly related to her serious medical conditions and approved as excused FMLA leave.

31. Despite Tamayo repeatedly providing a clear picture to her supervisors and human resources personnel, both in-person and via email, of the serious, negative health effects caused by the harassment and discrimination exhibited by UW-Stout, their discriminatory behavior only increased. Tamayo's job duties were reduced, she was excluded her from department meetings,

her hours were cut and she was made to call in multiple times for each absence which prevented recovery and negatively impacted her mental health.

32. Tamayo, in real danger of self-harm due to the pervasive, discriminatory treatment she received at the hands of UW-Stout employees, submitted her resignation on August 25, 2020. Said resignation was accepted on August 28, 2020.

### FIRST CAUSE OF ACTION – FAILURE TO PROVIDE REASONABLE ACCOMMODATION
### VIOLATION OF 42 U.S.C. § 12112(b)(5)

33. Tamayo realleges and incorporates the allegations in all previous paragraphs.

34. At all relevant times, Tamayo had a physical impairment that substantially limited her in one or more major life activities.

35. At all relevant times, Tamayo was a qualified individual with a disability.

36. At all relevant times, Tamayo could perform the essential functions of the Inventory Control Coordinator, with or without reasonable accommodation.

37. Defendant failed to make reasonable accommodations for Tamayo, which failure constitutes a violation of 42 U.S.C. § 12112(b)(5).

38. Tamayo has suffered and continues to suffer pecuniary harm, emotional injury, and pain and suffering as a result of Defendant's conduct.

### SECOND CAUSE OF ACTION – DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT
### VIOLATION OF 42 U.S.C. § 12112(a) and § 12112 (b)

39. Tamayo realleges and incorporates the allegations in all previous paragraphs.

40. Defendant discriminated against Tamayo in the terms and conditions of her employment based on her disability by harassing her, repeatedly requesting medical

documentation, reducing her hours, removing job duties, moving her out of her office, and excluding her from department meetings.

41. Tamayo's disability was a motivating factor in Defendant's employment decisions and actions described herein.

42. Defendant's conduct was a violation of 42 U.S.C. § 12112(a) and § 12112 (b).

43. Tamayo suffered and continues to suffer pecuniary harm and emotional injury as a result of Defendant's discrimination.

### THIRD CAUSE OF ACTION- RETALIATION FOR OPPOSING DISCRIMINATION IN THE WORKPLACE
### VIOLATION OF 42 U.S.C. §12203(a)

44. Tamayo realleges and incorporates the allegations in all previous paragraphs.

45. Defendant violated 42 U.S.C. §12203(a) when it enacting discipline against Tamayo based upon her disability by punishing her for refusing an unpaid leave of absence, reducing her hours, removing job duties, moving her from her office, harassing her for unnecessary medical documentation and by additional conduct described herein.

46. Tamayo has and will continue to suffer pecuniary loss and emotional harm as a result of Defendant's wrongful conduct.

### FOURTH CAUSE OF ACTION – INTERFERENCE WITH FAMILY MEDICAL LEAVE ACT RIGHTS
### VIOLATION OF 29 U.S.C. §2615

47. Tamayo realleges and incorporates all previous paragraphs.

48. Defendant violated 29 U.S.C. §2615 and interfered with Tamayo's rights under the Family Medical Leave Act when it refused to approve her requests for leave, required unnecessary medical documentation, reduced her hours, removed her job duties, moved her from her office, and by additional conduct described herein in response to her requests for FMLA leave.

49. Tamayo has and will continue to suffer pecuniary loss and emotional harm as a result of Defendant's wrongful conduct.

### FIFTH CAUSE OF ACTION – RETALIATION/DISCRIMINATION VIOLATION OF 29 U.SC. § 2615 (a)(2), 29 U.SC. § 2615 (b), and 29 USC § 825.220(a) and (c)

50. Tamayo realleges and incorporates the allegations in all previous paragraphs.

51. Defendant retaliated and discriminated against Tamayo for exercising her rights under the FMLA by changing her job duties and responsibilities, harassing her, creating a hostile work environment, excluding her from meetings, reducing her hours, requiring unnecessary and duplicative medical documentation and then unreasonably interpreting the same, disciplining her for FMLA related absences and by its conduct described herein.

52. Tamayo's exercise of her rights under the FMLA was a motivating factor in the adverse employment actions.

53. Tamayo has suffered and continues to suffer pecuniary harm and emotional distress as a result of Defendant's wrongful conduct.

WHEREFORE, Plaintiff, Jadalyn R. Tamayo, respectfully requests the following relief:

A. Back pay.

B. Appropriate injunctive relief.

C. Liquidated damages.

D. Compensatory damages.

E. Punitive damages.

F. Attorney's fees and costs.

F. Such other further relief as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED**

Dated: 4-1-2021

                        **BAKKE NORMAN, S.C.**

By: _____
Kathleen R. Avoles
Attorney No. 1063821
1200 Heritage Drive, P.O. Box 308
New Richmond, WI 54017-0308
(715) 246-3800
kavoles@bakkenorman.com
Attorneys for Jadalyn R. Tamayo