IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JADALYN TAMAYO,

                Plaintiff,

v.

KRISTI KRIMPELBEIN, KIM SHULTE-
SHOBERG, STEVE SODEN, CARLEY
KUKUK, and
BOARD OF REGENTS OF THE UNIVERSITY OF
WISCONSIN SYSTEM,

                Defendants.

OPINION and ORDER

21-cv-217-jdp

---

    Plaintiff Jadalyn Tamayo, a former employee at the University of Wisconsin—Stout, alleges that her supervisors failed to accommodate her anxiety and depression and disciplined her for taking medical leave. Tamayo says that the mistreatment made her working conditions intolerable and led to her resignation. Tamayo is suing her former supervisors under the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA). Tamayo also brings claims under the Rehabilitation Act against the Board of Regents for the University of Wisconsin System.[1]

    Defendants move to dismiss Tamayo's claims against the individual defendants. Dkt. 22. Defendants contend that (1) Tamayo has not stated a claim for constructive discharge because the working conditions she alleges are not intolerable; and (2) defendants are entitled to qualified immunity for the individual capacity FMLA claims because it was not clearly established that public officers could be sued under the statute.

---

[1] Tamayo voluntarily dismissed her Rehabilitation Act claims against the individual defendants. Dkt. 28.

The count will deny the motion. Tamayo has pleaded facts that state a plausible claim for constructive discharge, and the individual defendants are not entitled to qualified immunity because Tamayo's rights under the FMLA were clearly established.

BACKGROUND

The following facts are drawn from Tamayo's amended complaint. Dkt. 12. In considering defendants' motion to dismiss, the court will accept Tamayo's plausible factual allegations as true and draw all reasonable inferences in her favor. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Tamayo worked for UW–Stout as a shipping and mailing associate and later as an inventory control coordinator. Tamayo suffers from anxiety and depression, dysthymic disorder, and adjustment disorder, and her conditions would sometimes cause her to be absent from work. Tamayo told her supervisors about her conditions, but in February 2018 she received a performance rating of below expectations because of her absences.

In April 2018, Tamayo submitted a request for FMLA leave. Tamayo's healthcare provider, Nurse Practitioner Jane Poeschel, estimated that Tamayo needed one to two days of leave per month for monthly flare-ups with some additional time for treatment. Dkt. 12, at ¶ 18. UW—Stout approved 12 weeks of intermittent leave, but it limited Tamayo to two absences per month.

A few months later, Poeschel submitted a new certification that said Tamayo would need additional time off for semiannual treatment visits for her mood disorder. UW—Stout approved the request. But soon after, one of Tamayo's supervisors told her that she would be

limited to two absences per month. Beyond that, absences would be unexcused unless Tamayo provided medical documentation when she returned to work. *Id.* at ¶ 22.

In the seven months from May to November 2018, Tamayo was absent from work 20 days. Defendant Kristi Krimpelbein, UW—Stout's chief human resources officer, emailed Tamayo requesting a pre-disciplinary meeting to discuss her absences. Krimpelbein encouraged Tamayo to take unpaid leave until Tamayo could begin receiving psychiatric treatment in January 2019. Tamayo chose not to take the leave, so Krimpelbein said that the school would look for an alternate placement for Tamayo. *Id*. at ¶ 28.

In February 2019, Tamayo received another rating of below expectations for her attendance. Later that year, defendant Kim Shulte-Shoberg, another supervisor, accused Tamayo of exceeding her available FMLA absences each month. *Id*. at ¶ 31.

Tamayo's doctor, Dr. Kristin Cummings, submitted a new certification that increased Tamayo's estimated absences to three to four days per month. The request was approved, but Tamayo says that she continued to be harassed for taking leave. *Id*. at ¶ 34. Tamayo was told that she needed to start calling in her absences, which was not required of other employees.

In late 2019, Tamayo attended several pre-disciplinary meetings to discuss her attendance. Tamayo was told that she needed to provide additional medical documentation for her previous absences. When Tamayo asked Krimpelbein why the school had made so many requests for Tamayo's medical documentation, Krimpelbein said she didn't trust Tamayo. Tamayo was suspended without pay for one day as discipline for absenteeism.

Tamayo says that her working conditions became intolerable during the months that followed. Tamayo's job duties were reduced, she was excluded from department meetings, and

3

her hours were cut. These actions exacerbated Tamayo's mental health issues, and Tamayo resigned in late August 2020.

ANALYSIS

Defendants move to dismiss Tamayo's claims against the individual defendants. Defendants contend that: (1) Tamayo has not stated a claim for constructive discharge; and (2) Tamayo's individual-capacity FMLA claims are barred by qualified immunity because it was not clearly established that public supervisors could be liable for violations of the FMLA. The court will address those contentions in turn.

## A. Constructive discharge claim

Sovereign immunity bars ADA and FMLA suits for money damages against state employees in their official capacities. *Bd. of Trs. v. Garrett*, 531 U.S. 356, 374 (2001) (ADA Title I); *Coleman v. Court of Appeals*, 566 U.S. 30, 43 (2012) (FMLA). But under the *Ex Parte Young* doctrine, plaintiffs can bring official-capacity claims against government employees if they seek prospective equitable relief for ongoing violations of federal law. *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). Tamayo seeks to be reinstated to her position. Reinstatement is prospective equitable relief that falls under the *Ex Parte Young* exception. *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986). But employees who voluntarily resign are only entitled to reinstatement if they were constructively discharged. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001).

Employees are constructively discharged if they are forced to resign because their working conditions, from the standpoint of a reasonable employee, had become intolerable. *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 527 (7th Cir. 2015). This is a high

standard; even severe and pervasive harassment that could support a hostile work environment claim does not necessarily render a workplace objectively intolerable. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007).

Defendants contend that Tamayo has not stated a constructive discharge claim. To state a claim, Tamayo must plead facts that plausibly suggest that she is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, defendants argue that the conditions Tamayo alleges are not intolerable, so she cannot plausibly sustain a claim for constructive discharge.

Although it is a close question, the court concludes that the conditions Tamayo alleges are plausibly intolerable. The Seventh Circuit's decision in *Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014), shows that the standard to state a plausible constructive discharge claim is quite low. *Carlson* concerned a constructive demotion claim, which has the same structure as a constructive discharge claim. *Id.* at 830. Carlson, the plaintiff, alleged that she was forced to drop out of a management training program because supervisors had "belittl[ed] her, assign[ed] her extra work, and [gave] her unjustifiably poor evaluations," which made her working conditions intolerable. *Id*. at 823. The district court dismissed the plaintiff's constructive demotion claim because she had not presented evidence of intolerable working conditions. *Id.* at 829.

The court of appeals reversed, concluding that the district court demanded too much at the pleading stage. *Id.* at 830. The court was satisfied that Carlson had included specific incidents of mistreatment, identified the behaviors that made her work intolerable, and alleged discriminatory intent. *Id*. The court noted that although the conditions described in the

5

complaint may not ultimately qualify as intolerable, Carlson had pleaded enough to survive a motion to dismiss under rule 12(b)(6).

If the conditions alleged in *Carlson* were plausibly intolerable, the conditions Tamayo describes are plausibly intolerable as well. Tamayo alleges that she was given unjustifiably poor evaluations because of her absences; she was excluded from department meetings; her position description was changed without her input; and she was singled out for attendance and documentation requirements. Her complaint paints a picture of an environment where she was punished for taking necessary medical leave, and a reasonable employee could plausibly find that arrangement intolerable.

To be sure, Tamayo has not pleaded a strong or particularly compelling claim. As defendants note, much of the harassment Tamayo alleges is not severe. Tamayo was given bad performances reviews for excessive absences, but Tamayo admits that she was absent for more days than she was approved to take. None of her requests for leave were ever denied. And requiring documentation for a medical absence is only a minor annoyance. Tamayo also alleges few specific instances of harassment, so it's not clear that the harassment at her workplace was pervasive.

But at the pleading stage, all Tamayo had to do was state facts that made her claim plausible, which she did. The question of whether Tamayo's working conditions were actually intolerable may be resolved at summary judgment. Tamayo's related FMLA and Rehabilitation Act claims against the board and her supervisors will survive to that stage, and much of the evidence relevant to those claims will be relevant to Tamayo's constructive discharge claim. So it makes sense for the court to decide the claims together later in the litigation with the benefit of a full record.

## B. FMLA individual capacity claims

Government officials are entitled to qualified immunity from suit unless their conduct violates clearly established statutory or constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The individual defendants contend that they are entitled to qualified immunity on Tamayo's FMLA claim because it was not clearly established that public agency supervisors can be sued for FMLA violations.

The statutory rights that Tamayo alleges were violated were clearly established. It is clearly established that public agencies are subject to FMLA requirements. *See* 29 C.F.R. § 825.104(a) ("public agencies are covered employers without regard to the number of employees employed"). And it is clearly established that covered employees have the right to take FMLA leave without interference or retaliation. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012) (interference claim); *James v. Hyatt Regency Chi.*, 707 F.3d 775, 781 (7th Cir. 2013) (retaliation claim).

Defendants don't argue that Tamayo's rights under the FMLA were not clearly established or that their actions didn't violate those rights. Rather, they argue that they are entitled to qualified immunity because it is not clearly established that public agency supervisors could be sued under the statute. *See* Dkt. 23 at 23–24. Although this court previously determined that the FMLA imposes liability on public agency supervisors, *see Hemenway v. Rock Cnty.*, No. 18-cv-307-jdp, 2018 WL 6050906 (W.D. Wis. Nov. 19. 2018), the Seventh Circuit has never squarely addressed the question and there is a circuit split on the issue. *See id.* at *7 (collecting cases).

But whether an official is entitled to qualified immunity does not turn on whether the official knew that they could be held *liable* for their actions. *Taylor v. Ways*, 999 F.3d 478, 481

7

(7th Cir. 2021). Instead, the question is whether the official's conduct violated clearly established law. *Id.* Put another way, if an official's conduct violated someone's clearly established rights, the official is not entitled to qualified immunity just because it was unclear whether he could be sued for it.

In their reply brief, defendants say that it is unclear whether FMLA protections apply in the public officer setting. Dkt. 31, at 11–12. But that's not a correct statement of law. Tamayo's right to FMLA protections was clearly established; defendants do not argue that it was unclear whether Tamayo was entitled to leave as a public employee. What *isn't* clearly established is whether public agency supervisors can be sued for violating a public employee's FMLA rights. Defendants don't dispute that the actions Tamayo alleges violate her clearly established right to take FMLA leave, so they are not entitled to qualified immunity on that ground.

ORDER

IT IS ORDERED that defendants' motion to dismiss plaintiff's amended complaint, Dkt. 22, is DENIED.

Entered March 21, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge